Valentine, J.
This was an action of replevin, brought by the defendant in error (plaintiff below) to recover the possession of two heifers, valued, respectively, at $45 and $15. The defendants below answered, setting up — First, substantially a general denial; second, that the defendants were officers of the city of Emporia, and impounded and held said cattle under an ordinance of the city, setting out the ordinance in full, and making it a part of the answer. The plaintiff below *demurred to this second defense on the . ground that it did not state facts sufficient to constitute a defense to the action. The court below sustained the demurrer, and the defendants excepted. The defendants, relying upon the sufficiency of the facts stated in their second defense, made no further appearance in the action. The plaintiff, however, further proceeded by introducing evidence, and obtaining a judgment in his favor and against the defendants for the cattle, and costs. We are asked to reverse this judgment, and the order of the court sustaining said demurrer.
The main question, and about the only one of any importance in the case, is whether said ordinance is constitutional, legal, and valid or not. But before proceeding to the discussion of that question it is necessary to dispose of some preliminary questions. We agree with counsel for defendant in error that on demurrer each cause of action or defense in a pleading, if demurred to separately, is usually considered separately, and as though it was the entire pleading; and it is always so considered unless it distinctly and intelligently refer to some other count or defense, or part of the record or exhibit, and *216 make the same a part thereof. Krutz v. Fisher, 8 Kan. *96; Butler v. Kaulback, Id. *671; Stewart v. Balderston, 10 Kan. *131. We also agree with counsel that the wrongful detention of the property is the gist of the action of replevin in this state, (Leroy v. McConnell, 8 Kan. *273; Wilson v. Fuller, 9 Kan. *176, *190;) and that the general denial in such an action is sufficient to put in issue all the allegations of the petition; and for the purposes of this case, (and for that only,) we will concede that the defendants in this case could have proved under their general denial all the facts set forth in their second defense; and still we think that the second defense was such that, if said ordinance is valid, the court erred in sustaining said demurrer, and the error is material and substantial. If said ordinance is valid, then said defense is undoubtedly sufficient, without resorting to anything else outside to aid or support it; and if the said defense is merely superfluous, on *aceount of there also being a general denial, then the remedy for the superfluity is by motion, and not by demurrer. A general demurrer can never reach a separate cause of action, or a separate defense, or an entire pleading, merely for superfluity.. When a court sustains a general demurrer, it does not and cannot say that the count or the defense is superfluous, but it merely says that the facts stated therein do not constitute a cause of action or a defense; and the ruling of the court in such a case is immediately subject to review by the supreme court. Civil Code, § 542. The party aggrieved is not bound to again submit do the court the question of the sufficiency of his facts to constitute .a cause of action or defense before he can take the case to the supreme court, although he might possibly have a right to submit said question to the trial court a second time under another count or defense.
There is a vast difference between striking out,- on motion, one of two or more counts or defenses for inconsistency, redundancy, or superfluity, (as in the case of Auld v. Kimberlin, 7 Kan. *601, *609,) and in deciding upon demurrer that the facts stated in a particular count or clause of a pleading do not constitute a cause of action or a defense. In the one case, the two or more causes of action or defenses are considered together, and compared with each other, and if inconsistent with each other, or if one is redundant or superfluous, the party setting them forth in his pleading may elect under which he will proceed before any one of them is stricken out, and he then proceeds with the understanding that proofs of the facts which are sufficient as a cause of action or a defense are admissible under the pleading which remains; but in the other case, the count or defense demurred to is considered as though it were the sole count or defense in the pleading. The pleader has no right to elect that some other part of the petition or answer may be ruled bad for inconsistency, redundancy, superfluity, or for some other cause; and if the demurrer *217 Ibe sustained, the court in effect says that the facts stated in said count or defense, and that might be proved thereunder, are not sufficient in law to constitute a causeof actionor defense, *wherever or however they may be proved. Hence, in such a case, it would be unreasonable to require that a party should, under some other count or defense, offer to prove the same facts which the court had just determined on demurrer were wholly insufficient.
Is said ordinance valid, so far as it applies to this case ? We think 'it is. Some portions of it may possibly be invalid, but not those that apply to or affect this case. Section 51 of the second-class city act (Laws 1872, p. 207) provides for just such an ordinance as the one we are now considering. See, also, sections 31 and 67 of said act, (Laws 1872, pp. 199,211.) Counsel for defendant in error claims that said ordinance is unconstitutional; but he does not point out any provision of the constitution that contravenes the provisions of this ordi:nance, and we hardly suppose that he desires us to declare the ordinance unconstitutional because “it is opposed to a spirit supposed to pervade the constitution, but not expressed in words.” Cooley, Const. Lim. 171; Walker v. Cincinnati, 21 Ohio St. 14, 41; Stockton & V. R. R. v. City of Stockton, 41 Cal. 162.
The able disquisitions found in many decisions and elementary works upon “due process of law,” “due course of law,” “law of the land,” etc., can have but little application in Kansas, for our constitutional provision upon that subject differs from that of almost every other state in the Union. It reads as follows: “All persons for injuries suffered in person, reputation, or property shall have remedy by due course of lato, and justice administered without delay.” Const. Bill • of Eights, § 18. We suppose that it is settled beyond all controversy that “due process of law,” etc., for transferring property from one person to another, before any injury has been suffered by the owner of the property, does not necessarily mean a judicial proceeding or a judicial determination. The distraining of cattle damage-feasant; the "taking up of strays; the sale of property, real or personal, for taxes ; the exercise of the power of eminent domain; the passage of remedial and retrospective statutes, legalizing what had previously been defectively executed or performed, and thereby •changing title to property, (Weister v. Hade, 52 Pa. St. 479, 480, •481; Cooley, Const. Lim. 371;) or the exercise of many police powers by the police officers of a city, — is as much “due process of law” ■.as any judicial determination can be, and yet they are not, as a rule, judicial proceedings. Nor does “due process of law” mean “a legal proceeding according to the course of the common law, nor must there be a personal notice to the party whose property is in question. It is sufficient if a kind of notice is provided by which it is reasonably probable that the party proceeded against will be appraised of what is going on, and an opporfcunitvis afforded him to defend.” Happy v. Mosher, 48 N. Y. 313, 318.
*218 It seems to be admitted that said cattle were taken up and impounded in accordance with said ordinance, and hence the naked question of the validity of said ordinance is all that we need now consider. ' The cattle were taken up in the night-time, while they were running at large in said city in violation of said ordinance, and were impounded by the defendants below, who were the proper officers for that purpose. On the next day the plaintiff below, who was the owner of the cattle, demanded them, and the officers refused to give them up unless the plaintiff should first pay them fifty cents for each of the cattle. This was the amount fixed by the ordinance for taking up and impounding each animal. The owner refused to pay said fees, and then commenced this action. Now, it will be admitted that where the law or an ordinance provides that the owner of the cattle shall, in addition to the cost of taking them up, impounding, and keeping them, pay for the damages that they may do to private individuals while unlawfully running at large, the question of damages, and the amount thereof, can be determined only by judicial investigation, and generally in a suit between the parties interested. Bullock v. Geomble, 45 111. 218. And it will also be admitted that where fines or forfeitures, or anything of a penal or criminal nature or character, is imposed, the question of whether the owner of the stock is liable-for the same can only be deter*mined by judicial investigation. Const. Bill of Rights, § 10; Poppen v. Holmes, 44 Ill. 360; Willis v. Legris, 45 Ill. 289. It will also be admitted that some notice-of some kind must be given, in order to render a sale of the property valid. Rosebaugh v. Saffin, 10 Ohio, 32. And it will also be admitted that the ordinance must be authorized by law, or |he charter of the city, in order to be valid. See, as sustaining these propositions, Rockwell v. Nearing, 35 N. Y. 302, 307; Campbell v. Evans, 45 N. Y. 356; Happy v. Mosher, supra; Ames v. Port Huron, L. D. & B. Co., 11 Mich. 147.
But when nothing is attempted to be imposed upon the owner of the stock as damages or penalty, but only the reasonable cost of taking up, impounding, and keeping the same, and sufficient notice is-provided for, and the ordinance authorized by the city charter, it is believed that no court has ever held the law, or the ordinance founded thereon, to be unconstitutional or invalid, although the sale may not be made under judicial process, although there may be no provision for a judicial investigation, except the general remedies to determine-whether the law or the ordinance has been complied with, and although the notice provided for may not be a personal notice, but only a notice by publication or by posting. The ordinance which we are-now considering does not attempt to impose upon the owner of the-stock any damages or penalty, but provides merely for payment for taking up, impounding, and keeping the stock, and for posting notices of sale, and making the sale, as follows: “For taking up and placing within the pound, each animal, fifty cents; for sustenance furnished *219 each animal, per day, 50 cents; for posting notices of sale, in each case, 30 cents; for making sale in each case, 30 cents.” Only the charge for taking up and impounding applies in the present case, for no other charges had yet accrued when the cattle were replevied, and no other charges were required from the owner before the officers were willing to surrender the cattle to the owner.
Every charge authorized by said ordinance must be considered as remedial in contradistinction to penal; and therefore *does not come within those decisions which declare that a penalty can be imposed only by judicial determination. Cattle running at large in the night-time, in a city, are supposed to be a nuisance, or at least such a thing is supposed to be against the best interests of the public; hence they are taken up and impounded, not as a penalty against the owner, but as a protection to the public; and the fees are fixed merely as 'reasonable compensation for the trouble of taking them up and keeping them, and not in any sense as a penalty. These fees immediately become a lien upon the cattle, and can only be discharged by payment; and the owner has no right to the possession of his cattle until he makes this payment, and discharges this lien. This is as far as this case goes, and this far the law and the ordinance must be valid beyond all doubt. No sale was attempted to be made in this case, and no fees were charged except for taking up and impounding the cattle. Whether the officers could have made a valid sale of the cattle, if they had not been replevied, it is not necessary now to determine; but yet we think they could. The officers were required to keep them at least six days before they offered them for sale, and could not then or at any time sell them without first giving at least three days’ notice of the sale by posting notices in at least three public places in said city. Whether the sale provided for in the ordinance would divest the owner of his title in and to the property, or would simply transfer the lien of the city thereto for the charges thereon, it is also unnecessary now to determine; and neither is it necessary for us now to determine whether after the sale has been made, and the surplus proceeds thereof, if any, paid into the city treasury, the ninety-day limitation will bar the right of the owner to receive said surplus from the city treasurer. That ordinances and proceedings similar in their main features to those we are now considering are valid, we would refer to the following authorities: Hellen v. Noe, 3 Ired. 493; Whitfield v. Longest, 6 Ired. 268; Gosselink v. Campbell, 4 Iowa, 296; Gilmore v. Holt, 4 Pick. 257; and Rockwell v. Nearing, and Campbell v. Evans, supra.
Such proceedings as *these do not determine a man’s rights without giving him his day in court. He has his action of replevin from the very moment that the officers take possession of the property until the statute of limitations bars such an action to try the legality and validity of the proceedings whereby his property *220 is taken; and if any irregularity or injustice should intervene, that would render the taking up of the property void, the same would also render' the sale, and all other proceedings connected therewith, void. And all this could be shown in an action of replevin. For instance, if some enterprising city marshal or other officer should take up a cow in the day-time, or should take her from an inclosure in the nighttime, or should go beyond the city limits to find her, these facts could be shown in an action of replevin, and after the sale as well as before, and would render the sale, and every proceeding connected therewith, or with the taking up of the cow, void. Thus, the owner •■of the cow, or the owner of any other stock, taken up and impounded, has, “for injuries suffered,” an ample “remedy by due course of law.” It may be claimed that six days is too short a time in which to authorize a sale. This may be true in some eases, but probably, as a rule, the time is sufficient. People generally know where their cattle run; and if any one of them should be put in a public pound, the owners would be likely to know it within six days. Probably, however, the time should be greater, and longer, and more general notice be given of the sale. But we need not speculate as to what would be a valid sale. All we need decide here is whether the ordinance authorizing the city officers to take up and impound cattle running at large in the night-time, and making the fees for taking them up and ■impounding them a lien on the cattle, and giving the officers the right to the possession of the cattle until the said fees are paid, is walid. We decide this question in the affirmative.
The judgment of the court below is reversed, and cause remanded, with the order that said demurrer to the second defense be overruled, ■and for further proceedings.
(All the justices concurring.)